TUCKER ELLIS LLP
Marc R. Greenberg - SBN 123115
marc.greenberg@tuckerellis.com
515 South Flower Street
Forty-Second Floor
Los Angeles, CA 90071-2223
Telephone: (213) 430-3400
Facsimile: (213) 430-3409

CONNOR, FLETCHER & HEDENKAMP LLP
Matthew J. Fletcher - SBN  204071
2211 Michelson Dr. Ste 1100
Irvine, CA 92612-1397
Telephone: (949) 622-2600

Attorneys for Plaintiff Savage Enterprises

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SAVAGE ENTERPRISES, a Wyoming corporation; , | Case No. 8:23-cv-00578 |
| Plaintiff, | **VERIFIED COMPLAINT FOR:** |
| v. | **(1) VIOLATION OF FEDERAL DEFEND TRADE SECRETS ACT [18 U.S.C. §§ 1836-39 ET SEQ.];** |
| CHRISTOPHER WHEELER, an individual, PRESTON WHEELER, an individual, AMBYR FREESTONE, an individual, MIA JENSEN, an individual, and THE NEW SAVAGE LLC, a Wyoming limited liability company, and DOES 1 through 10, inclusive, | **(2) VIOLATION OF CALIFORNIA TRADE SECRETS ACT [CAL. CIV. CODE §§ 3426-3426.11];** |
| | **(3) FALSE DESIGNATION OF ORIGIN [15 U.S. CODE § 1125(A)];** |
| | **(4) BREACH OF CONTRACT;** |
| | **(5) BREACH OF FIDUCIARY DUTY;** |
| | **(7) INDUCING BREACH OF CONTRACT;** |
| Defendants | **(8) INTENTIONAL INTERFERENCE WITH ECONOMIC ADVANTAGE;** |
| | **(9) NEGLIGENT INTERFERENCE WITH ECONOMIC ADVANTAGE;** |
| | **(10) CONVERSION UNDER CALIFORNIA COMMON LAW AND VIOLATION OF CALIFORNIA PENAL CODE § 496(C);** |
| | **(11) VIOLATION OF CALIFORNIA PENAL CODE § 502(C); AND,** |
| | **(12) UNFAIR COMPETITION [CAL. BUSINESS & PROFESSIONS CODE §§ 17200]** |
| | **DEMAND FOR JURY TRIAL** |

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

COMPLAINT

Plaintiffs Savage Enterprises ("Savage") alleges as follows, upon actual knowledge with respect to itself and its own acts, and on information and belief as to all other parties.

## I. INTRODUCTION

1.    This case is brought to stop defendant Christopher Wheeler from achieving his stated goal of destroying Savage Enterprises, a $150,000,000 company with over 250 employees, that he helped create. To achieve his goal, Wheeler, while still a board member of Savage, established a company with his brother called "The New Savage," obviously with the intent to create confusion in the industry and benefit from Savage's good name and reputation.  To add insult to injury, Wheeler proceeded to falsely tell customers and vendors that Savage was going out of business, to be replaced by The New Savage.

2.    Chris Wheeler and, his co-conspirators, then began operating The New Savage using the stolen trade secrets, confidential information, employees, and branding of Savage.  In direct violation of written agreements and his fiduciary duties as an officer and director of Savage, Wheeler stole trade secrets and confidential information, poached key employees, and interfered with Savage's relationships with business partners and customers. Wheeler, with his childish bravado and arrogant showmanship is actively promoting "The New Savage" brand on social media, as shown below:



3.     After years of disregard for corporate governance, integrity, or respect for the corporate structure, Wheeler had to be terminated as the President and CEO of Savage Enterprises ("Savage"), a company he co-founded in 2015.  His insubordination to the Board of Directors, cavorting with employees, and his unabated spending of corporate funds for personal desires had to come to an end. Upon learning of the consequences of his malfeasance, Wheeler, with the aid of his associates, retaliated by misappropriating trade secrets, valuable confidential information, and proprietary work product of Savage, as well as executed corporate transaction documents, in acts documented in Savage's IT systems and surveillance cameras. The investigation of the Defendants' misconduct is ongoing.

4.     Wheeler used his confidential insider knowledge, along with  stolen information from Savage, to start a competing business, named "The New Savage LLC" ("New Savage"), obviously with the clear intention of causing damage to Savage and enhancing the image of his new, competing, enterprise.  Wheeler then engaged in an incendiary campaign of soliciting Savage's employees, business partners, and wholesale customers, and spreading misinformation about Savage going out of business.  These acts took place while Wheeler remained on Savage's Board of Directors and have continued after Wheeler resigned from the Board, causing substantial harm to Savage and its reputation in the marketplace.  Wheeler's conduct has, and will continue to, harm not only the value of his own stock in Savage, but the livelihood of hundreds of employees. Wheeler's refusal to accept the direction of Savage's Board of Directors, along with his arrogant need to prove himself right, has caused damages that are beyond calculation. Wheeler is not running a lemonade stand on his front lawn.  More than 250 people rely on the jobs created by Savage. Wheeler's insistence at "burning down the house" around himself must be stopped, because he is not the only victim of his arrogance. Wheeler needs to grow-up and learn that disregard of contracts and the law has consequences.

5.     Unless enjoined by this Court, Defendants will continue to use trade secrets and proprietary information of Savage, trade on the goodwill of Savage, damage the

reputation Savage has built over eight years, all in an attempt to preempt Savage's ability to offer products that are uniquely associated with Savage and meet Savage's quality standard.  Rather than starting a new company with a different name and developing their own recipes, formulas, marketing materials, client lists and vendors, Defendants chose to use Savage's, thereby enabling them to compete immediately rather than undertaking the time, labor, and cost of creating their own. Defendants, obviously, set out to steal rather than create what is required to start a new business.

## II. JURISDICTION AND VENUE

6.     Jurisdiction rests with this Court pursuant to 28 U.S.C. § 1331 and/or § 1337 on the grounds that this is a civil action arising under the laws of the United States, and/or arising under federal statute, specifically the Defend Trade Secret Act, 18 U.S.C. §§ 1836-39 et seq., thus presenting a federal question.  This Court also has supplemental subject-matter jurisdiction over all claims not arising under the laws of the United States pursuant to 28 U.S.C. § 1367 because they are so related that they form part of the same case or controversy.

7.     This Court has personal jurisdiction over Defendants because the acts alleged in this Complaint took place within the State of California and this District, and the individual Defendants Christopher Wheeler, Preston Wheeler, Ambyr Freestone, and Mia Jensen reside in this District.

8.     Venue is proper in this Court and pursuant to 28 U.S.C. § 1391 on the grounds that and a substantial part of the events or omissions giving rise to this action occurred within this District.

## III. THE PARTIES

9.     Plaintiff Savage Enterprises ("Savage") is a Wyoming corporation with the principal place of business at 1 Vanderbilt, Irvine, CA 92618.

10.   Defendant Christopher Wheeler ("Wheeler"), is a married individual residing in Orange County, CA, is a thirty-three year old former co-founder, director, President and CEO of Savage.  Wheeler defied the Board of Directors and thereafter started a

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

competing company and engaged in malicious acts described here in while still a director of Savage.

11.   Defendant Preston Wheeler ("P. Wheeler"), an individual residing in Orange County, CA, is a younger brother of Wheeler, who Wheeler publicly holds out as a business partner in New Savage. Preston Wheeler was formerly an employee of Savage and an intern at a company acquired by Savage, Honest PP&D, and is complicit in Chris Wheeler's and New Savage's bad acts.  While at Honest, Preston had access to and copied formulas for products created by Honest PP&D.

12.   Defendant The New Savage LLC ("New Savage"), a Wyoming limited liability company, is a company created by Wheeler and P. Wheeler to compete with Savage and engaged in malicious acts described herein.  New Savage Inc. was created on February 20, 2023 and on the following day, it was converted to New Savage LLC, presumably to evade liability for Defendant Wheeler's bad conduct.  It is inconceivable that the company was named "The New Savage" for a reason other than a predatory attempt to damage Savage and promote "the New Savage." At the time the Wheelers created New Savage, Wheeler was still on the Board of Savage and a major shareholder.

13.   Defendant Ambyr Freestone, an individual residing in Orange County, CA is a former employee of Savage and Defendant Wheeler's assistant.  On information and belief, Defendant Ambyr Freestone has a "personal relationship" with Defendant Wheeler and was complicit in, and aided and abetted, his bad acts prior to and after their departure from Savage.

14.   Defendant Mia Jensen, an individual residing in Orange County, CA is a former employee of Savage, who was lured away from Savage by Wheeler while Wheeler was still a director at Savage, and who took a highly confidential valuable Client List, with contact persons private information, in an attempt to lure clients from Savage and capitalize on Plaintiff's cultivated customer leads.

15.   Plaintiff is ignorant of the true names and capacities of the defendants sued herein as John Doe 1 to 10 inclusive, and for that reason has sued them by their fictitious

names.  Upon information and belief, Plaintiff alleges that each of these fictitiously named defendants is responsible in some manner, either individually or in conspiracy of other defendants, for some or all of the acts alleged herein, and that Plaintiff's damages as herein alleged were legally caused by such defendants.  Investigation of the Defendants' conduct is ongoing and Plaintiffs anticipate additional claims and allegations.

## IV. FACTUAL SUMMARY

### A. Background

16.   Savage was founded in 2015 by Matthew Winters ("Winters"), and Defendant Christopher Wheeler ("Wheeler").

17.   Savage is in the business of design, manufacture, marketing, and selling flavored vape products, as well as hemp-derived and cannabis-related products, sold in California and throughout the United States.  As former smokers seeking a better alternative, Wheeler and Winters sought to provide full transparency, high-quality products at a low cost to their customers.

18.   Thanks to the diligence and hard work of its leadership team and employees, Savage has continued in business since its inception and, in 2022, had gross sales in excess of $150,000,000 and employed over 250 individuals.  Current shareholder ownership of Savage is 40.5% Winters; 40.5% Wheeler; 10% Brittany Hawkins; 4.5% Ernest J. Ciaccio; and 4.5% Abraham I. Sahagun.

19.   Winters, Wheeler, and Winters' sister, Hawkins have been the three directors of Savage from its inception until the recent events giving rise to the lawsuit, as more fully detailed below.

20.   Wheeler and Winters have been the sole officers of Savage since its inception, with Winters acting as Secretary, Treasurer, and Chief Financial Officer until December 2021, and Wheeler acting as President and Chief Executive Office, until Wheeler's recent removal as President and CEO, as discussed below.

21.   Savage's innovative products are marketed with unique and proprietary graphics and branding, which are developed in-house with a great investment of time and

resources from Savage. Savage rapidly became an industry leader, whose exponential growth is largely attributable to substantial investment in building and maintaining an effective marketing department, which consists of a creative arts, marketing, and product development division, a sales lead generation team, and a sales team.

22.   Because Savage spends a great deal of resources generating its leads, and then using in-house sales teams to cultivate relationships and wholesale customers, it protects its customer lists and sales leads by maintaining them in a database that is password-protected.  Passwords are allocated to employees so long as they are employed with Savage and disabled upon the termination or separation of any employee.

23.   To further protect Savage's confidential and proprietary information, Savage requires all employees to execute a Nondisclosure, Noncompete, Non-circumvention Agreement, which amongst other things, and to the broadest extent possible, prohibits former employees from taking with them and using customer information, trade secrets, product and marketing information, as discussed in more detail below.

**B. Wheeler's Obligations Under the Employment Agreement**

24.   On or about May 18, 2022, as part of a Merger and Purchase Agreement in which Savage acquired a manufacturing company Honest PP&D, Wheeler executed an Employment Agreement. A true and correct copy of the Employment Agreement is attached hereto as **Exhibit A**. The Employment Agreement was negotiated as part of the merger, under which Honest PP&D owners Abe Sahagun and Ernie Ciaccio became shareholders in Savage, and sought to ensure protection of their ownership interests.  The Employment Agreement requires Wheeler to "loyally, conscientiously, and professionally do and perform all duties and responsibilities reasonably related to the job," which "***may be modified from time to time in the sole and absolute discretion of, the Board***." Exhibit A, Section 1.2, as shown below:

1.2   <u>Full Time and Best Efforts</u>.  Executive shall serve the Company as follows:  During the Term (as defined in paragraph 3 below), Executive shall devote his full business time, efforts, abilities, and energies in his position as an executive officer of the Company.  Executive shall use his best efforts, skill, and abilities to promote the general welfare and interests of the Company.  Executive shall loyally, conscientiously, and professionally do and perform all duties and responsibilities reasonably related to the job as shall be specified and designated from time to time by, and any job description that describes the duties and responsibilities of Executive may be modified from time to time in the sole and absolute discretion of, the Board. Executive shall, if requested, also serve as a member of the board of directors of the Company or any member of Company Group (defined herein) for no additional compensation.  The term "Company Group" shall mean the Company, together with any entity in which the Company holds or owns (directly or indirectly and beneficially or of record) an equity, partnership interest or similar voting interest.

25.   The Employment Agreement further requires Wheeler to protect Savage's confidential information, "not disclose any such trade secrets, directly or indirectly" and not to use such information "in any way either ***during the term of this agreement or at any time thereafter*** except as required in the course of his employment for the Company." *Id*., Section 5, as shown below:

5.   <u>CONFIDENTIALITY, PROPRIETARY INFORMATION AND ASSIGNMENT OF INVENTIONS.</u>

The parties hereto acknowledge and agree that, during the term of this Agreement and in the course of the discharge of his duties, Executive shall have access to and become acquainted with information concerning the operation of the Company Group including, without limitation, operating procedures and trade secrets of members of the Company Group, intellectual property and other technical information, financial, personal, sales, planning and other information that is owned by members of the Company Group and regularly used in the Company's business and that this information constitutes trade secrets of such member of the Company Group. Executive agrees that he shall not disclose any such trade secrets, directly or indirectly, to any other person or used in any way either during the term of this agreement or at any time thereafter except as required in the course of his employment for the Company. On or prior to Executive's execution and delivery of this Agreement, Executive shall execute and deliver a Confidentiality, Proprietary Information and Assignment of Inventions Agreement (the "Proprietary Information and Inventions Agreement") substantially in the form attached hereto as <u>Exhibit B</u>.

26.   The Employment Agreement further includes a "Proprietary Information and Inventions Agreement" ("PIIA") that separately requires Wheeler to protect Savage's Proprietary Information, broadly defined in the PIIA to include all data, designs, and information relevant to Savage's business, as described in Section A of the PIIA. *Id*. at 15.

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

The prohibition on disclosing or using such Proprietary Information outside of Wheeler's duties at Savage likewise extends to "all times, both during my employment by the Company and ***after its termination.***" *Id*. at 15, Section C(1), as shown below:

> 1.    All Proprietary Information and all patents, copyrights and other rights in connection therewith shall be the sole property of the Company. I hereby assign to the Company any rights I may have or acquire in such Proprietary Information. At all times, both during my employment by the Company and after its termination, I will keep in confidence and trust and will not use or disclose any Proprietary Information or anything relating to it without the prior written consent of an officer of the Company, except as may be necessary in the ordinary course of performing my duties to the Company. Nothing contained herein will prohibit an employee from disclosing to anyone the amount of his wages.

27. The PIIA further prohibits Wheeler from removing any Company Documents, as defined in the PIIA. *Id*., Section C(2), as shown below:

> 2.    All Company Documents shall be the sole property of the Company. I agree that during my employment by the Company, I will not remove any Company Documents from the business premises of the Company or deliver any Company Documents to any person or entity outside the Company, except as I am required to do in connection with performing the duties of my employment. I further agree that, immediately upon the termination of my employment by me or by the Company for any reason, or during my employment if so requested by the Company, I will return all Company Documents, apparatus, equipment and other physical property, or any reproduction of such property,

28. Finally, the PIIA also reiterates that the obligations of the above clauses continue past the termination of employment. *Id*. at 17, Section C(10).

> 10.    I agree that my obligations under <u>paragraphs C(1)</u> through <u>C(5)</u> and <u>paragraph C(7)</u> of this Agreement shall continue in effect after termination of my employment, regardless of the reason or reasons for termination, and whether such termination is voluntary or involuntary on my part, and that Savage is entitled to communicate my obligations under this Agreement to any future company or potential company of mine.

## C. Wheeler's Termination as President and CEO of Savage

29. Beginning in or about December 2022, while Wheeler was acting in his capacity as director, President, and CEO of Savage, Wheeler began pursuing the development of a new product line that included as an ingredient a psychoactive distillate, muscimol, found in the mushroom Amanita muscaria. A majority of shareholders and directors believed this product line was not ready for sale to the public, and at a meeting of shareholders and directors held on December 19, 2022, voted against pursuing this

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

product line until further research could be conducted and an agreement could be reached by a majority of the shareholders and directors.

30.   In violation of his Employment Agreement, Wheeler ignored the vote of the Board, and proceeded with directing Savage's financial, marketing, sales, and manufacturing resources to the development of an Amanita muscaria product line.  His efforts, contrary to the express direction of the majority of the Board, led to product being manufactured, packaged, and being ready to ship to customers.  The Board believed that the product line was not yet suitable for release for public consumption and instructed Wheeler to cease the pursuit of this activity.

31.   Wheeler's efforts continued unabated and resulted in an investigation into Wheeler's activities while acting in his capacity as President and CEO.  As a result of this investigation, Savage discovered that Wheeler misappropriated company funds for his own personal use. Wheeler used the company account as his personal piggy bank, paying tens of thousands of dollars of personal expenses as if they were corporate expenses, evading both payment and personal tax liability. On information and belief, the accounting records reveal that Wheeler, despite his wealth, was stealing from the company.

32.   Because Wheeler would not cease his unauthorized activities related to the launch of the Amanita muscaria product line, and in light of the discovery of the above-described misappropriation of funds, the majority of the Board of Directors terminated Wheeler as President and CEO of Savage on February 16, 2023.  Attached hereto as **Exhibit B** is a copy of an email from Winters to Wheeler, sent immediately after Winters verbally apprised Wheeler of the termination on February 16, 2023

33.   Wheeler could not be terminated as a director because no special meeting of shareholders had been convened for that purpose, due to the quick pace of the events that led to the need for his immediate termination. On March 9, 2023, Wheeler resigned as a director of Savage and any affiliated entities via email. Attached hereto as **Exhibit C** is the email sent by Wheeler documenting his resignation, in which he comically attempts to back-date his resignation to a date before he created New Savage.

**D. Wheeler's Founding of Savage's Clone - "New Savage" - and Efforts to Solicit Employees to Populate the Clone**

34.   Immediately upon his termination, and while <u>still a director</u> of Savage, Wheeler commenced a campaign directed at destroying Savage and enriching himself, including, but not limited to, the following acts.

35.   On or around February 20, 2023, Wheeler and his brother caused the creation of "The New Savage Inc.," and on February 21, 2023, the entity was converted to The New Savage LLC ("New Savage"). Attached as **Exhibit D** are copies of the Articles of Incorporation and the Conversion / Articles of Organization of New Savage. On March 4, 2023, while Wheeler was still a director of Savage, Wheeler registered the domain exoduscanna.com for his competing business.

36.   Wheeler used his knowledge of key Savage employees and their contact information obtained in the course of his employment with Savage, to secretly solicit them to leave Savage and go work for New Savage.

37.   Wheeler succeeded in soliciting away the following key employees who left Savage and are now employed with New Savage:  Ambyr Freestone (Wheeler's assistant) who left on February 16, 2023, Joseph Poteet (videographer on marketing team) who left on February 23, 2023, Zoe Soward (brand manager) who left on February 23, 2023, Andrew Bader (office administrator assistant) who left on February 23, 2023, and Mia Jensen (sales associate) who left on March 5, 2023.

38.   On February 22, 2023, Wheeler contacted Savage's head of Human Resources, Nicole McDevitt, and offered her a contract to leave Savage and come to work for New Savage. Attached hereto as **Exhibit E** is true and correct copy of email and a proposed contract Wheeler delivered to McDevitt in his attempt to solicit her away from Savage, in violation of his fiduciary duties to Savage. On same day, Wheeler also contacted Savage's head Compliance Officer, Victoria Walsh, and offered her a contract to leave Savage and come to work for New Savage.

39.

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

**E. Wheeler's Misappropriation of Proprietary Information and Documents**

40.    Upon information and belief, while at Savage, Wheeler conducted a substantial part of his work for Savage on a personal laptop. Upon his termination, Wheeler kept the laptop with substantial amounts of Savage's proprietary and confidential information, including product recipes, formulas, plans, and pricing, marketing plans, and information about Savage's business partners, wholesale customers, and customer leads. This laptop should be placed in the custody of a Special Master to prevent further abuse of Savage's trade secrets, and confidential and proprietary information.

41.    Upon information and belief, Wheeler obtained highly confidential recipes for products made by Savage and Honest PP&D from Preston Wheeler in the form of an Excel document and continues to have this document on his laptop and/or other devices. Screenshots of text messages where Wheeler acknowledges having this document in his possession, redacted to remove confidential information, are shown below:




42. As part of his solicitation of Savage's employee Mia Jensen ("Jensen"), a co-defendant in this Action, on information and belief, Wheeler recruited Jensen to leave Savage to join him at New Savage and directed Jensen to use her password-protected email account to access Savage's proprietary wholesale customer lead list, which she did. The list consisted of active clients and over 500 carefully cultivated customer leads that required substantial employee hours to generate at significant expense to Savage ("Client List"). Savage's in-house computer technology expert has documented Jensen accessing the database via her Savage email the day she quit, emailing herself a copy of the Client List, and then deleting her email.

43. Savage's Client List of active customer accounts and cultivated leads is highly valuable confidential information and Savage takes extensive precautions in guarding such information, including password-protected access to such files and requiring that all employees with access sign a Nondisclosure, Noncompete, Non-circumvention Agreement.

44. A true and correct copy of Jensen's signed Nondisclosure, Noncompete, Non-circumvention Agreement is attached hereto as **Exhibit F**. Jensen's Nondisclosure, Noncompete, Non-circumvention Agreement specifically notes that customer lists constitute Savage's trade secrets, and prohibits disclosure or use of such information. Exhibit F, Section 8.

45. Prior to Wheeler's termination, Savage's product development department had expended considerable time and resources in preparing new products for launch under the Savage brands. New Savage misappropriated Savage's proprietary product plans, recipes, formulas, designs, and marketing plans for these products, and began marketing and selling the products as New Savage's own, under the brand name "Exodus."

**F. Freestone's Theft of Executed Corporate Documents**

46. For business reasons, Savage often sets up separate corporate entities for its distinct product lines and sub-brands. For the Amanita muscaria product line research and development, Savage set up an entity named Trippy Extrax, LLC (

"Trippy Extrax") with Freestone as a sole member and President of the LLC.  Savage's investment entity, Savage Capital LLC ("Savage Capital"), whose only member is Savage, entered into a Convertible Note Agreement and a Promissory Note – Line of Credit Agreement with Trippy Extrax, whereby Savage Capital loaned at least $285,000 to Trippy Extrax with the option to convert the loan into a 95% ownership stake in Trippy Extrax. Freestone signed the Convertible Note Agreement on behalf of Trippy Extrax.[1]

47.   On February 16, 2023, immediately after Wheeler's termination, Freestone entered the office of Savage's corporate counsel and took the original fully executed Convertible Note Agreement and Promissory Note – Line of Credit Agreement, which was captured on Savage's video security system.  Because Freestone was responsible for scanning the documents, no electronic copies of the executed document were made. Savage's corporate counsel recognized the documents in the video by the way they are clipped and the post-it note on the cover. Stills from the video of the removal of documents are shown below:



48.   On February 21, 2023, Savage Capital exercised the option to convert the loan into 95% ownership of Trippy Extrax, and Winters sent the signed conversion letter to Freestone. Savage's counsel prepared an Action By Written Consent Of Member to effectuate the transfer of ownership for Freestone's signature, however, Freestone refused to sign and asked that Savage send "send over the signed conversion note with my

---

[1] Although the Note and Convertible Note Agreement contemplated a line of credit up to $285,000, the preliminary investigation undertaken by Savage after Wheelers termination establishes that substantially more than $285,000 has been extended by Wheeler.

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

signature on it for verification."  The exchange between Winters, Freestone, and Savage's corporate counsel with attachments is attached hereto as **Exhibit G**. Savage's counsel apprised Freestone that the executed Convertible Note Agreement appears to be lost, stolen, or destroyed and attached the unsigned version. Exhibit G at 1. Savage's counsel asked Freestone: "If your position is that without a signed original there is no agreement between Trippy and Savage Capital, please advise, either directly or through counsel." *Id*. Freestone has not responded to this question. Upon information and belief, Freestone took the signed originals in an attempt to defraud Savage Capital out of its investment and 95% ownership stake in Trippy Extrax.

49.   Upon information and belief, on March 6, 2023, Defendants, in an attempt to operate an entity they do not rightfully own, changed the name from Trippy Extrax LLC to Trippy Exotix LLC.  Then, on March 23, 2023, Defendants subsequently changed the name from Trippy Exotix LLC to Trippy Exodus LLC.  Upon information and belief, New Savage is also selling products under the name Trippy Exodus LLC.

**G. New Savage's Use of Confusingly Similar Trade Name and Trade Dress**

50.  As part of its distinctive branding, Savage has developed and used in commerce throughout the United States continuously since May 2022 highly recognizable packaging designs, which constitute its inherently distinctive and valuable trade dress (the "Savage Trade Dress"). Sold under Savage's brands Delta Extrax and Trippy Extrax, Savage's packaging trade dress includes a "drippy paint" motif in bright colors, echoed in the Delta Extrax website logo, graffiti-style fonts, and "drippy paint" fruit that represents the fruit flavor, as shown below:





Printouts of Savage's Delta Extrax website are attached hereto as **Exhibit H**. Similarly, Savage's Trippy Extrax brand adopted consistent trade dress with colorful paint drip motifs:



*See* Exhibit H at 3-4.

      51.    After his termination from Savage, Wheeler announced his launch of the confusingly similar trade name New Savage on social media. Attached hereto as **Exhibit I** are social media posts by Wheeler promoting the New Savage trade name.

TUCKER ELLIS LLP

Chicago ◆ Cleveland ◆ Columbus ◆ Los Angeles ◆ San Francisco ◆ St. Louis

52.    Wheeler and New Savage then began marketing products with highly confusingly similar packaging designs under the brand name "Exodus":



Printouts of New Savage's Exodus account on Instagram are attached hereto as **Exhibit J**.

53.    New Savage's packaging designs marketed under the Exodus brand are nearly identical to Savage's packaging designs and incorporate prominent elements of the Savage Trade Dress.  New Savage's use of these packaging designs and the New Savage trade name have caused and are likely to cause confusion, mistake, and deception among the relevant consumers and business partners as to the source or origin of the Defendants' products and have and are likely to deceive consumers and business partners into believing, mistakenly, that Defendants' products originate from, are associated or affiliated with, or are otherwise authorized by Plaintiff.

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

54.  In fact, at least one customer of Savage has commented on and inquired about the similarity of New Savage's packaging to Savage's packaging when solicited by New Savage's employees, describing the new products and packaging as "eerily similar":



55.  Savage has expended substantial time, money, and resources marketing, advertising, and promoting its goods sold under the Savage Trade Dress, with over $1 million in advertising expenditures.  Products featuring the Savage Trade Dress are advertised with *High Times* magazine, *Leafly*, *Herb*, *LA Times*, *Slyng*, and other publications and websites, and through social media channels via affiliate marketers and influencers.  Savage attends numerous trade shows, including Champs (in Las Vegas, Atlantic City, and Chicago,) C3 (Counter Culture Convention), ATAC, ASD, Alternative Products Expo, and Total Product Expo, where Savage was a sponsor in 2023. Savage's products featuring the Savage Trade Dress have received unsolicited media coverage,

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

including excellent reviews.  A printout of a review from DabConnection.com rating Savage's Goliath product as "One of the Best" is attached as **Exhibit K**.

56.  Savage's sales reps have reported that in calls with its wholesale customers, customers have stated that they are confused by New Savage's highly similar and, in some instances, nearly identical packaging.  Sales reps are reporting that wholesale customers are purchasing New Savage products under the incorrect belief that New Savage's Exodus line is a budget line offered by Savage.

57.  Defendants' use of the New Savage trade name and confusingly similar trade dress has caused and is continuing to cause confusion in the marketplace and is causing irreparable harm to Savage.  It is obvious that the creation of confusion in the marketplace was intentional, willful, and predatory.

**H. Wheeler's Interference with Savage's Business Partners and Customers**

58.  Since his termination and while still a director of Savage, Wheeler has engaged in active solicitation of Savage's business partners and customers, in an effort to undermine their relationships with Savage.  New Savage employees, at Wheeler's direction, are also spreading misinformation that Savage is going out of business and New Savage is taking over.

59.  In one instance, Savage's current President learned while attending Total Product Expo that Wheeler interfered with Savage's confidential business relationship with an exclusive supplier, by offering the supplier a vested equity interest in his new company in exchange for terminating the supplier's relationship with Savage and replacing it with a relationship with New Savage. Wheeler falsely told the supplier that Savage is going out of business.

60.  In another instance, Savage has an important and confidential business relationship with a long-time distributor,  which has generated tens of millions in revenue for Savage in 2022.  In mid to late 2022, this distributor and Savage began negotiating a long-term contract.  While contract negotiations were ongoing, Wheeler started New Savage, promoted it on social media, and created massive market confusion as described

Tucker Ellis LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

above.  Ultimately, the distributor refused to sign the contract with Savage.  The distributor stated that one of the main bases for this decision was "confusion in the marketplace regarding Savage Enterprises and New Savage Enterprises formed by Chris Wheeler" as stated in a confidential slide presentation provided by the distributor.  The distributor pulled out of the negotiations due to the confusion in the marketplace caused by Wheeler and New Savage.

61. Savage's wholesale customers have also reported that New Savage employees have reached out to them, claiming that Savage is going out of business, undermining Savage's ongoing customer relationships.

**I. Damages to Savage**

62. As a director of Savage and major shareholder, Wheeler owed fiduciary duties to Savage and its shareholders, including the duty of loyalty, which requires him to refrain from conduct that would be detrimental to Savage.  Wheeler breached his fiduciary duties, as well as the Employment Agreement and the PIIA, in his actions described above, including misappropriation of funds, theft of trade secrets including the Client List, proprietary product recipes, formulas, pricing information, product plans and marketing plans, solicitation of employees for New Savage while still a director of Savage, using confusingly similar trade name and trade dress, and interference with Savage's contracts. The damage Wheeler's conduct has caused, and is causing, to Savage, its brand and its business, is substantial and ongoing.

63. By the acts described above, Defendants have caused and will continue to cause continuing and irreparable injury to Savage, which cannot be cured in full by monetary damages.  Defendants' wrongdoing has caused and will continue to cause irreparable harm to Savage as follows:

a. Loss of confidential Client List and the competitive advantage it confers Savage in the industry, all to the benefit of New Savage;

b. Loss of confidential product recipes, formulas, plans, and designs, pricing information, and marketing plans for Savage's planned products, all to the

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

benefit of New Savage that is seeking to launch those very same products;

c.  Consumer confusion and loss of goodwill associated with the Savage brand and Savage Trade Dress;

d.  Loss of contracts and relationships with Savage's business partners;

e.  Loss of personnel and ability to conduct Savage's business;

f.  Injury to Savage's reputation and goodwill due to Wheeler's and New Savage employees' claims that Savage is going out of business;

g.  Present economic loss and future economic loss, in an amount to be ascertained;

64.  Monetary damages are insufficient to fully compensate Savage for the harm caused by Defendants.  At this time, it is impossible to quantify the present and future economic losses that Savage is suffering and will continue to suffer due to the misappropriation of its trade secrets and confidential information, loss of business relationship, talented agents and employees to a competitor – all due directly to the wrongdoing of Defendants as described herein.  If Defendants' conduct continues unrestrained, the trust and confidence that customers have in Savage will be permanently impaired.

## FIRST CAUSE OF ACTION
### (Violation of The Federal Defend Trade Secrets Act
### Against New Savage, Wheeler, Preston Wheeler, and Jensen)

65.  Plaintiff realleges and incorporates herein by reference the allegations of the paragraphs above.

66.  Savage's confidential and proprietary business and customer information derives substantial, independent economic value from not being generally known to the public or to Savage's competitors, who could obtain economic value from the information. Savage expended substantial financial and human resources to develop this information, which cannot be easily acquired or replicated by others.  Further, Savage has taken substantial efforts to maintain the secrecy of its confidential and proprietary business and customer information, including but not limited to restricting access to such information,

designating such information as confidential, and requiring confidentiality agreements. Accordingly, Savage's confidential and proprietary business and customer information constitutes trade secrets pursuant to the Federal Defend of Trade Secrets Act ("DTSA"), 18 U.S.C. §§1836-39 et seq.

67.   Defendants' misappropriation of Savage's confidential and proprietary business and customer information will destroy the value of this information and diminish the competitive advantage that such information gives to Savage.  In addition, Defendants' conduct will result in the diversion of substantial business from Savage.

68.   As a direct and proximate result of the Defendants' misappropriation of Savage's trade secrets, Savage has sustained and will continue to sustain irreparable injury.  Accordingly, Plaintiff is entitled to injunctive relief and damages in an amount to be established.

## SECOND CAUSE OF ACTION
### (Misappropriation of Trade Secrets Against New Savage, Wheeler, Preston Wheeler, and Jensen)
### (California Civil Code §§ 3426-3426.11)

69.   Plaintiff realleges and incorporates herein by reference the allegations of the paragraphs above.

70.   Savage's confidential and proprietary business and customer information derives substantial, independent economic value from not being generally known to the public or to Savage's competitors, who could obtain economic value from the information. Savage expended substantial financial and human resources to develop this information, which cannot be easily acquired or replicated by others.  Further, Savage has taken substantial efforts to maintain the secrecy of its confidential and proprietary business and customer information, including but not limited to restricting access to such information, designating such information as confidential, and requiring confidentiality agreements. Accordingly, Savage's confidential and proprietary business and customer information constitutes trade secrets pursuant to Sections 3426.1, *et seq*. of the California Civil Code.

71. Defendants' misappropriation of Savage's confidential and proprietary business and customer information will destroy the value of this information and diminish the competitive advantage that such information gives to Savage. In addition, Defendants' conduct will cause the diversion of substantial business from Savage.

72. As a direct and proximate result of the Defendants' misappropriation of Savage's trade secrets, Savage has sustained and will continue to sustain irreparable injury. Accordingly, Plaintiff is entitled to injunctive relief and damages in an amount to be established.

## THIRD CAUSE OF ACTION
### (False Designation of Origin / Infringement of Unregistered Trade Dress Against New Savage, Wheeler and Preston Wheeler) (15 U.S.C. § 1125(a) and California common law)

73. Plaintiff realleges and incorporates herein by reference the allegations of the paragraphs above. Defendants' conduct as alleged herein constitutes false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and infringement of unregistered trade dress under the California common law.

74. Savage has used the SAVAGE trademark in interstate commerce since at least as early as May 1, 2021 and owns U.S. trademark applications for the SAVAGE mark, U.S. Serial Nos. 97009232 and 97009205.

75. As a result of its widespread, continuous, and exclusive use of the Savage Trade Dress to identify its vaping, CBD, and Amanita muscaria products and Savage as their source, Plaintiff owns valid and subsisting ownership rights to the Savage Trade Dress. The Savage Trade Dress is inherently distinctive and has gained substantial customer recognition in the marketplace. Savage has expended substantial time, money, and resources marketing, advertising, and promoting its goods sold under the Savage Trade Dress.

76. Savage advertises its CBD products sold under the Delta Extrax brand and Amanita muscaria products sold under the Trippy Extrax brand, both featuring the Savage Trade Dress, via respective websites, social media channels, and trade websites, shows,

Tucker Ellis LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

and publications.  Upon information and belief, New Savage uses the same or overlapping trade channels to market its Exodus brand products featuring its infringing and confusingly similar trade dress.  Upon information and belief, New Savage markets its products to the same or overlapping consumer categories as Savage.

77.   Upon information and belief, Defendants have committed the foregoing acts of infringement with full knowledge of Plaintiff's prior rights in the Savage trademark and the Savage Trade Dress and with the willful intent to cause confusion and trade on Plaintiff's goodwill.

78.   Defendants' conduct is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this court. Plaintiff has no adequate remedy at law.  Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## FOURTH CAUSE OF ACTION
### (Breach of Contract Against Wheeler and Jensen)

79.   Plaintiff realleges and incorporates herein by reference the allegations of the paragraphs above.

80.   Defendant Wheeler breached his Employment Agreement with Savage by failing to "loyally, conscientiously, and professionally do and perform all duties and responsibilities reasonably related to the job," which "may be modified from time to time in the sole and absolute discretion of, the Board" when he refused to follow the Board's decision not to launch the Amanita muscaria product line. *See* Exhibit A, Section 1.2.

81.   Wheeler further breached his Employment Agreement with Savage by using Savage's confidential information, including customer lists and customer leads lists, product recipes, formulas, product designs, and product and marketing plans, in violation

of Section 5 of the Employment Agreement and Section C(1) of the Proprietary Information and Inventions Agreement.

82.   Wheeler also breached his Employment Agreement by directing Freestone to remove Savage's documents from its corporate counsel's office in violation of Section C(2) of the Proprietary Information and Inventions Agreement.

83.   Defendant Jensen breached her Nondisclosure, Noncompete, Non-circumvention Agreement with Savage by misappropriating Savage's confidential information and using such information at New Savage.

84.   Wheeler's and Jensen's conduct is in furtherance of a scheme to obtain and use the trade secrets of Savage.  Defendants' conduct will destroy the value of Savage's confidential business information, result in the loss of Savage's competitive advantage in the marketplace, and divert from Savage substantial business.

85.   As a direct and proximate result of Wheeler's and Jensen's breaches of their contracts, Savage has sustained and will continue to sustain irreparable injury. Accordingly, Plaintiff is entitled to injunctive relief and damages in an amount to be established.

## FIFTH CAUSE OF ACTION
### (Breach of Fiduciary Duty Against Wheeler, Preston Wheeler, Freestone, and Jensen)

86.   Plaintiff realleges and incorporates herein by reference the allegations of the paragraphs above.

87.   As a director officer and major shareholder Wheeler owed to Savage fiduciary duties of loyalty, good faith, and confidence.  His fiduciary duties required him, among other things, to act in Savage's best interests and maintain the confidentiality of Savage's trade secrets and other confidential and proprietary information.  His fiduciary duties required Wheeler to refrain from, among other things, soliciting Savage's employees to join a competing company, or soliciting Savage's customers and prospective customers for his competing business, using information he obtained from Savage.

88.   Wheeler's conduct will result in the destruction of value of Savage's confidential information and trade secrets, the loss of competitive advantage in the marketplace, and the diversion of substantial business and prospective business and revenue.

89.   On information and belief, Preston Wheeler, Freestone, and Jensen conspired with Wheeler and aided and abetted his breach of fiduciary duties.

90.   As a direct and proximate result of Wheeler's breach of fiduciary duty, Savage has sustained and will continue to sustain irreparable injury.   Accordingly, Plaintiff is entitled to injunctive relief and damages in an amount to be established.

## SIXTH CAUSE OF ACTION
**(Inducing Breach of Contract Against New Savage, Wheeler, and Preston Wheeler)**

91.   Plaintiff realleges and incorporates herein by reference the allegations of the paragraphs above.

92.   Savage's employees are bound by Nondisclosure, Noncompete, Noncircumvention Agreements, which obligate those employees, among other not to disclose or use Savage's trade secrets or other confidential or proprietary business or customer information outside of the scope of their employment with Savage, during or after their employment with Savage.

93.   By virtue of his position with Savage, Wheeler knew or should have known of the existence and terms of the Nondisclosure, Noncompete, Noncircumvention Agreements between Savage and its employees.

94.   Wheeler intentionally, maliciously and improperly interfered with Savage's agreements with its employees, including with Jensen, by attempting to induce them to breach their agreements with Savage by, among other things, obtaining and using Savage's trade secrets or other confidential or proprietary business or customer information. As a result of Wheeler's actions, Jensen did breach her Nondisclosure, Noncompete, Noncircumvention Agreement with Savage. There was no privilege or justification for Wheeler's conduct.

95.  On information and belief, Preston Wheeler and Freestone, conspired with Wheeler and aided and abetted in inducing the breach of contract.

96.  As a direct and proximate result of Wheeler's conduct, Savage has sustained and will continue to sustain irreparable injury, the damages from which cannot now be calculated.  Accordingly, Plaintiff is entitled to injunctive relief and damages in an amount to be established.

## SEVENTH CAUSE OF ACTION
### (Intentional Interference with Actual and Prospective Economic Advantage Against All Defendants)

97.  Plaintiff realleges and incorporates herein by reference the allegations of the paragraphs above.

98.  Savage has developed and maintains advantageous actual and prospective business relationships with its customers and business partners that promise a continuing probability of future economic benefit to Savage.

99.  As described more fully above, Wheeler interfered with Savage's relationship with an exclusive supplier, by asking the supplier to cease working with Savage and work for New Savage. Wheeler offered the supplier a percentage of New Savage to do so, and informed the supplier that Savage is going out of business.

100. In another instance, Wheeler interfered with Savage's relationship with a significant long-term distributor, which terminated its negotiations of a contract and its relationship with Savage due to the "confusion in the marketplace regarding Savage Enterprises and New Savage Enterprises formed by Chris Wheeler" as stated by the distributor in a confidential slide presentation.

101. Savage's wholesale customers have also reported that New Savage employees have reached out to them, claiming that New Savage is going out of business, undermining Savage's ongoing customer relationships.

102. Because Wheeler occupied a high-level position with Savage, Wheeler knew or reasonably should have known about Savage's advantageous actual and prospective business relationships with its customers and business partners.

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

103. Wheeler intentionally, maliciously and improperly interfered with and continues to interfere with Savage's relationships with its customers and business partners, by, among other things, directly and/or indirectly attempting to induce Savage's customers and business partners to sever their relationships with Savage and to induce them to do business with New Savage instead, through false and defamatory statements, such as claiming that Savage is going out of business.

104. Wheeler's actions also constitute wrongful conduct above and beyond the act of interference itself, including misappropriation of trade secrets, breach of contract, breach of fiduciary duty, and unfair competition. There was no privilege or justification for Wheeler's conduct. Wheeler's conduct was willful and malicious.

105. On information and belief, Preston Wheeler, Freestone, and Jensen, conspired with Wheeler and aided and abetted in the intentional interference with actual and prospective economic advantage described above.

106. Because of Wheeler's actions, Savage's relationships with above business partners and wholesale customers have been disrupted or are at risk for disruption. As a direct and proximate result of Wheeler's interference, Savage has sustained and will continue to sustain irreparable injury, the damages from which cannot now be calculated. New Savage's and Wheeler's wrongful conduct was a substantial factor in causing Savage's harm.  Accordingly, Plaintiff is entitled to injunctive relief and damages in an amount to be established.

## EIGHTH CAUSE OF ACTION
### (Negligent Interference with Actual and Prospective Economic Advantage Against All Defendants)

107. Plaintiff realleges and incorporates herein by reference the allegations of the paragraphs above.

108. Savage has developed and maintains advantageous actual and prospective business relationships with its customers and business partners that promise a continuing probability of future economic benefit to Savage, which include its relationships with

Matrax and distributor American Vapor Company (also known as Pastel Cartel), as well as other business partners and wholesale customers.

109. Because Wheeler occupied a high-level position with Savage, Wheeler knew or reasonably should have known about Savage's advantageous actual and prospective business relationships with its business partners and wholesale customers.

110. Wheeler failed to exercise reasonable care and negligently interfered with and continues to interfere with Savage's relationships with its customers and business partners, by, among other things, directly and/or indirectly attempting to induce Savage's customers and business partners to sever their relationships with Savage and to induce them to do business with New Savage instead, through false and defamatory statements, such as claiming that Savage is going out of business.

111. Wheeler's actions also constitute wrongful conduct above and beyond the act of interference itself, including misappropriation of trade secrets, breach of contract, breach of fiduciary duty, and unfair competition. There was no privilege or justification for Wheeler's conduct.

112. On information and belief, Preston Wheeler, Freestone, and Jensen, conspired with Wheeler and aided and abetted in the negligent interference with actual and prospective economic advantage described above.

113. Because of Wheeler's actions, Savage's relationships with the business partners and wholesale customers described above have been disrupted or are at risk for disruption. As a direct and proximate result of Wheeler's interference, Savage has sustained and will continue to sustain irreparable injury, the damages from which cannot now be calculated.   New Savage's and Wheeler's wrongful conduct was a substantial factor in causing Savage's harm.  Accordingly, Plaintiff is entitled to injunctive relief and damages in an amount to be established.

### NINTH CAUSE OF ACTION
**(Conversion under California Common Law and Violation of California Penal Code § 496(c) against All Defendants)**

114. Plaintiff realleges and incorporates herein by reference the allegations of the paragraphs above.

115. Savage was, and still is, entitled to the immediate and exclusive possession of its trade secrets and other proprietary information, and all physical or digital embodiments thereof, as alleged above. Savage was, and still is entitled to the immediate and exclusive possession of its fully executed copies of the Convertible Note Agreement and the Promissory Note – Line of Credit Agreement. Savage was, and still is, entitled to the immediate and exclusive possession of its funds misappropriated by Wheeler and its ownership stake in Trippy Extrax LLC and/or Trippy Exotix LLC and/or Trippy Exodus LLC.

116. Savage is informed and believes that Defendants took Savage's trade secrets and other proprietary information, including but not limited to records containing confidential clients and client lead information, product recipes, and other confidential information, and converted them for the use of Defendants and those acting in concert with them. In addition, Savage is informed and believes that Freestone converted the executed copies of the Convertible Note Agreement and the Promissory Note – Line of Credit Agreement in an attempt to defraud Savage. Savage is also informed and believes that Wheeler converted Savage's funds for improper uses.

117. Savage had ownership, possession or control over the property described above before its conversion and an absolute and unconditional right to the possession of such property, and Defendants, wrongfully and without authorization, exercised an unauthorized dominion over the property in question to the exclusion of Savage's rights. Savage has demanded a return of its property from Defendants, which Defendants did not respond to.

118. The continued detention of Savage's personal property by the Defendants constitutes conversion under California common law. As a direct and proximate result of the Defendants' conversion, Savage has sustained and will continue to sustain irreparable

injury, the damages from which cannot now be calculated.  Accordingly, Savage is entitled to injunctive relief and damages.

119. Pursuant to California Penal Code §496(c), Savage is also entitled to recover treble the amount of actual damages, costs of suit, and reasonable attorneys' fees.

120. Defendants' acts of conversion were done to deprive Plaintiff of its property and legal rights or otherwise cause injury, and were despicable, malicious, oppressive, and or fraudulent conduct that justify an award of exemplary damages and punitive damages in an amount to be determined.

## ELEVENTH CAUSE OF ACTION
### (Civil Claim for Violation of California Penal Code § 502(c) Against Jensen, Wheeler, and New Savage)

121. Plaintiff realleges and incorporates herein by reference the allegations of the paragraphs above.

122. Plaintiff is informed and believes and based thereon alleges that Jensen, Wheeler, and New Savage, violated section 502(c)(5) of the California Penal Code by knowingly, and without permission, accessing and using Savage's data, software, computer, and/or computer systems to wrongfully obtain and transfer data.

123. Savage has suffered damage from these violations of Penal Code section 502(c).

124. Under California Penal Code section 502(e), Plaintiff is entitled to compensatory damages, injunctive relief or other equitable relief, and attorney's fees pursuant to Penal Code section 502(e)(2) for these violations of Penal Code section 502(c), including seizure and forfeiture of all the instrumentalities of the crime, such as computers used to obtain and transfer the stolen information, and the stolen property and information in the possession of any Defendant.

125. Defendants' conduct evidences that Defendants, and each of them, have acted willfully, fraudulently, and maliciously within the meaning of Civil Code § 3294 so as to entitle Plaintiff an award of punitive damages pursuant to Penal Code section 502(e)(4).

## TWELFTH CAUSE OF ACTION
### (Unfair Competition – California Business & Professions Code §§ 17200, *et seq*. Against All Defendants)

126. Plaintiff realleges and incorporates herein by reference the allegations of the paragraphs above.

127. Defendants' conduct as set forth above and incorporated herein is unlawful, unfair, fraudulent and deceptive, and constitutes unfair and unlawful competition in violation of Section 17200, *et seq*. of the California Business and Professions Code. Defendants' conduct will result in the loss of the competitive advantage Savage now holds in the marketplace, and the diversion from Savage of substantial amounts of business.

128. Defendants' actions beyond false and defamatory statements to Savage's business partners and actual and prospective customers also constitute wrongful conduct in violation of other laws, including misappropriation of trade secrets, infringement of trade name and trade dress, breach of contract, breach of fiduciary duty, intentional interference with actual and prospective economic advantage, negligent interference with actual and prospective economic advantage, and conversion.

129. As a direct and proximate result of Defendants' unfair competition, Savage has sustained and will continue to sustain irreparable injury, the damages from which cannot now be calculated.  Accordingly, Plaintiff is entitled to injunctive relief and damages in an amount to be determined.

## PRAYER FOR RELIEF

WHEREFORE, Savage prays for relief as follows.

1.      That the Court enter a judgment against Defendants that Defendants have:

a. Misappropriated Savage's trade secrets in violation of DTSA and California Uniform Trade Secrets Act;

b. Infringed the rights of Savage in its trade name and Savage Trade Dress in violation of 15 U.S.C. § 1125(a);

c. Breached fiduciary duties to Savage;

d. Induced breach of contract with Savage;

e. Intentionally interfered with Savage's actual and prospective economic advantage;

f. Negligently interfered with Savage's actual and prospective economic advantage;

g. Engaged in conversion under California common law and violations of Penal Code § 502(c);

h. Engaged in unfair competition in violation of California Business and Professions Code §§ 17200, *et seq.* and California common law.

2.     That each of the above acts was willful.

3.     That the Court issue a temporary restraining order, preliminary injunction, and permanent injunction enjoining and ordering Defendants, and anyone working with or on behalf of Defendants, as follows:

a) ordering Defendants to return to Savage all of its property, information, data, records and documents, and all copies, derivations and products thereof, in the possession, custody or control of Defendants or of any person or entity acting in concert with them, including the executed Convertible Note Agreement and a Promissory Note – Line of Credit Agreement;

b) prohibiting Defendants and all those acting in concert with them, from using, transmitting, or otherwise disclosing, directly or indirectly, trade secrets or Proprietary Information of Savage and/or Honest PP&D Inc., as those terms

COMPLAINT

are described in Wheeler's Employment Agreement and Proprietary Information And Inventions Agreement, Exhibit A to the Complaint or Confidential Information of Savage and/or Honest PP&D Inc., as the term Confidential Information is defined in the Nondisclosure, Noncompete, Non Circumvention Agreement, Exhibit F to the Complaint, including customer or customer leads information, business partner information, product recipes, formulas or specifications, product plans or designs, pricing information, or marketing plans, materials or designs;

c) prohibiting Defendants and all those acting in concert with them from selling, marketing, or otherwise introducing into commerce any products made, wholly or in-part, with trade secrets or Proprietary Information or Confidential Information of Savage, including, but not limited to customer and customer lead information; business partner and vendor information; product recipes or formulas; product plans or designs; pricing information; marketing materials, plans, or designs;

d) prohibiting Defendants, and anyone working with them or on their behalf, from destroying or altering any information, data, records or documents, including copies, products and derivations thereof, related to the facts at issue in this case;

e) prohibiting Defendants from interfering with any business relationships Savage has with its business partners or customers or from defaming or disparaging Savage, including but not limited to written or verbal statements, social media posts regarding Savage or falsely representing that Savage is out of business or soon to be out of business;

f) prohibiting Defendants from using the name "The New Savage" or any names that include the word "Savage" or from infringing the Savage trademark or the Savage Trade Dress and enjoining the Defendants from:

COMPLAINT

i.  manufacturing, distributing, selling, marketing, advertising, promoting, or authorizing any third party to manufacture, distribute, sell, market, advertise, or promote Defendants' goods bearing trade dress that infringes and is confusingly similar to the Savage Trade Dress or the Savage trade name and trademark or any other trade dress or trade name that is confusingly similar to Plaintiff's trademark, trade name or the Savage Trade Dress;

ii.  engaging in any activity constituting unfair competition with Plaintiff;

iii.  making or displaying any statement, representation, or depiction that is likely to lead the public or the trade to believe that (i) Defendants' goods are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by, or associated, affiliated, or otherwise connected with Plaintiff, or (ii) Plaintiff's goods are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by, or associated, affiliated, or otherwise connected with Defendants;

iv.  using or authorizing any third party to use any false description, false representation, or false designation of origin, or any marks, names, words, symbols, devices, or trade dress that falsely associate such business, goods and/or services with Plaintiff or tend to do so;

v.  registering or applying to register any trademark, service mark, domain name, trade name, or any other mark that infringes or is likely to be confused with Plaintiff's Savage trade name and trademark or the Savage Trade Dress;

g)  prohibiting Defendants, and anyone working with or on behalf of Defendants, from aiding, assisting, or abetting any other individual or entity in doing any act prohibited by sub-paragraphs (a) through (f) above; and

2.  Recovery of all damages;

3.  Recovery of treble damages and the Plaintiff's attorneys' fees pursuant to Penal Code §§ 496(c) and 502(e) and under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest;

4.  Punitive damages in the amount of three times amount of loss determined at trial; and,

5.  Such other relief as the Court finds equitable and appropriate to compensate Savage for the damages caused by Defendants, prevent further damages, and to punish Defendants for their intentional and reprehensible conduct.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and Local Rule 38-1, Plaintiff hereby demands a jury trial.


DATED:  March 30, 2023                    TUCKER ELLIS LLP

By:     /s/ Marc R. Greenberg
_____
Marc R. Greenberg
marc.greenberg@tuckerellis.com

Attorneys for Plaintiff Savage Enterprises



CONNOR, FLETCHER & HEDENKAMP LLP

By:     /s/ Matthew J. Fletcher
_____

Matthew J. Fletcher
mfletcher@businesslit.com

Attorneys for Plaintiff Savage Enterprises

COMPLAINT

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

## **VERIFICATION**

The undersigned, on behalf of Savage Enterprises, declares:

I have read the foregoing complaint and know the contents thereof. With respect to the allegations and causes of action set forth therein, I believe them to be true, except for those matters which are stated on information and belief, and as to those, I believe them to be true.

I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.

DATED: March 30, 2023

/s/ Matt Winters

Matt Winters